UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGEL R. GONZALEZ,

    Petitioner,

-vs-                                    Case No. 8:14-cv-2619-T-27JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    **Respondent.**
_____/

## ORDER

Angel R. Gonzalez, a Florida inmate, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. He challenges his Hernando County convictions for first degree murder and robbery with a firearm. (Dkt. 1). He filed a notice adding a claim for relief. (Dkt. 7). Respondent opposes the requested relief. (Dkt. 11). Gonzalez filed a reply. (Dkt. 12). The petition and supplemental ground are DENIED.

## PROCEDURAL HISTORY

Gonzalez was convicted after a jury trial of first degree murder and robbery with a firearm. (Dkt. 11, Ex. A). He was sentenced to life in prison for first degree murder and to a concurrent prison term of 40 years for robbery with a firearm. (Dkt. 11, Ex. C). The state appellate court affirmed, *per curiam*. (Dkt. 11, Ex. K). The state postconviction court denied his motions for postconviction relief filed under Florida Rule of Criminal Procedure 3.850. (Dkt. 11, Exs. N–S, DD, EE). The state appellate court affirmed, *per curiam*. (Dkt. 11, Exs. W, II). The state appellate court denied his petition alleging ineffective assistance of appellate counsel filed under Florida Rule of Appellate Procedure 9.141(d). (Dkt. 11, Exs. Y, CC).

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).[1] A petitioner must demonstrate that the state court's adjudication of his federal claim was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2).

## DISCUSSION

### Ground One

Gonzalez alleges "ineffective assistance of counsel." (Dkt. 1 at 8). He contends:

(1) Trial counsel[']s lack of preparation for a capital case led to a cumulative of errors in trial that rose above and beyond the level of ineffective assi[s]tance.

(2) A guilty verdict in trial where Petitioner[']s co-defendant[']s confession to crime was never introduced in trial. Even though it was undisputed Petitioner did not murder the victim and did not take victim[']s property till after the death. Where code[fe]ndant handed it to Petitioner.

(3) Counsel never introduced witnesses or affidavit provided to counsel prior to trial. which would of [sic] gave merit to Petitioner[']s alibi. to the of [sic] funds seized by detectives.

(4) Counsel failed to conduct depositions on any witness prior to trial. Leaving counsel unprepared to effectively cross[-]examine.

(5) Counsel failed to object to evidence submitted in trial that could not be authenticated.

(Dkt. 1 at 8).

---

[1] The AEDPA applies. *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).

## A. Properly exhausted claims

### Claim (2); claim (3), in part

Gonzalez exhausted two of the claims alleged in this ground by raising them in his first postconviction motion and on appeal.[2] Specifically, he argued that trial counsel rendered ineffective assistance by failing to request admission of a police statement of the co-defendant and by failing to call Raymond Lewis at trial to verify the origin of monies seized at Gonzalez' house. (Dkt. 1 at 21-23, 34-35; Dkt. 11, Resp. Ex. U). Claims (2) and (3), in part, respectively, are liberally construed to raise these claims.[3]

Ineffective assistance claims are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is "doubly" so. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations and internal quotation marks omitted).

### Claim (2): trial counsel's alleged failure to request admission of a police statement of the co-defendant

Ivan Horne was fatally shot in the yard of a house in a remote area. Gonzalez made statements prior to the murder implicating himself and Stephen Horne in a plan to rob Horne's father to obtain prescription pills. He bought shotgun shells for Stephen Horne the same day the victim

---

[2] A petitioner must exhaust available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and quotation marks omitted). He must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[3] While claim (3) does not specify the witness, Gonzalez includes his postconviction motion, which identifies only Lewis as the person whom counsel did not call to "verify the origin" of seized money. (Dkt. 1 at 34-35).

3

obtained prescribed oxycodone pills. After the murder and robbery, he made incriminating statements, including that he received oxycodone pills and money.

Gonzalez alleged in his first postconviction motion that Stephen Horne initially told police that Gonzalez and Horne intended to rob and kill the victim. He asserted that Horne changed his story several times, and Horne's "final version" of the events exculpated him. (Dkt. 1 at 21-22). Specifically, he alleged: "Horne stated that the Defendant did not know that he intended to kill his father. Horne said that the Defendant only intended to buy some pills from Ivan Horne and that robbery and murder were not a part of any plan as far as he knew." (Dkt. 1 at 22). Gonzalez alleged that his trial counsel should have requested admission of Horne's confession to the murder. (*Id.*).

**The state postconviction court's decision**

The state postconviction court, in summarily denying his claim, held that while he identified an omission of counsel, he had not adequately shown prejudice. (Dkt. 11, Ex. P, R 148). The state court noted that he specifically stated Horne gave a statement that Gonzalez and Horne intended to rob and murder the victim, and only in Horne's final version did Horne state that Gonzalez was unaware of the intent to rob and murder the victim. (*Id.*). The state court found that had the final statement been admitted, the initial statement would have also been admitted. (*Id.*). Deference is given to this state law determination.[4]

Gonzalez contends in his Reply that "the evidence presented at trial in conjunction with the exculpatory statement made, viewed in it[]s proper perspective[,] would have lead to an exoneration

---

[4]*See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (citation omitted).

of the charges." (Dkt. 12 at 6). To the extent he alleges the jury would have credited the final version given by Horne had counsel presented it, his speculation is insufficient to establish *Strickland* prejudice. He must "affirmatively prove prejudice." *Id.* at 668. In denying relief on the prejudice prong, the state postconviction court found that the evidence of his involvement was overwhelming. (Dkt. 11, Ex. P, R 149). This determination is reasonable in light of the strong evidence that Gonzalez intended to, and did, participate in the plan to commit robbery.

**The evidence at trial**

The victim's body was found in a yard of a house in a sparsely populated area of Ridge Manor, with no paved roads or street lights. (Dkt. 11, Ex. B, T 24, 38-39). His body had multiple shotgun-type wounds. (Dkt. 11, Ex. B, T 260). He had no pants or shoes. A receipt for oxycodone pills he obtained on May 3, 2010, was found between his legs. (Dkt. 11, Ex. B, T 80-81, 108-09, 217). Prior to May 3, 2010, Gonzalez told his girlfriend, Jessica Conant, that Stephen Horne said he wanted to rob the victim. (Dkt. 11, Ex. B, T 216). Also prior to May 3, 2010, Cassandra Parish saw Stephen Horne with his shotgun at Gonzalez' house. (Dkt. 11, Ex. B, T 151). On May 3, 2010, she accompanied Gonzalez to purchase shotgun shells at a Walmart. He told her that he and Horne were going to "hit a lick" for pills ("Roxies"). (Dkt. 11, Ex. B, T 153-54). Later that day, Gonzalez and Horne went to Tampa to get Conant after work, and they returned to the house Conant shared with Gonzalez. Before she went to bed, he told her he was going to take Horne home. (Dkt. 11, Resp. Ex. B, T 218-20). He later admitted in the police interview that he took Horne in Conant's car to Tampa to get the victim and then took Horne and the victim to Hernando County. (Dkt. 11, Ex. B, T 319, 322). He said that he gave Horne money to buy "Roxies." He also said he knew Horne had a shotgun. Horne fired the shotgun, discharging a shell in the rear seat. (Dkt. 11, Ex. B,

T 323-26). He said that Horne directed him where to drive, and he drove to a house where the victim and Horne got out. (Dkt. 11, Ex. B, T 327). Horne told him to drive around the block, and after he pulled out, he heard noises and saw flashes. (Dkt. 11, Ex. B, T 328-29). He stated that when he turned around, Horne was trying to "shake off" the victim's pants. He said that he helped Horne remove the pants and put them in the car. (Dkt. 11, Ex. B, T 343-44). He said he took Horne home,[5] Horne gave him oxycodone pills, and he "snorted" at least one. (Dkt. 11, Resp. Ex. B, T 335-36, 344). He said Horne gave him about $300, and of that sum, $250 belonged to him. (Dkt. 11, Ex. B, T 357-58).

When he returned home, he told Conant that he was fine. He also said that the money came through and Horne had to stay low for a while. (Dkt. 11, Ex. B, T 221-23). He spoke with Parish and told her that everything was fine and he was laying low. (Dkt. 11, Ex. B, T 164-65). When he went to her house, she asked about the robbery. Gonzalez told her that they were supposed to get all of the victim's pills, but the victim sold most of the pills, so they got the pills he had and his money. (Dkt. 11, Ex. B, T 168-70). He gave her money and 13 pills. He told her if she sold ten, she could keep three. She said she sold ten and gave him money. (Dkt. 11, Ex. B, T 156, 166, 170).

Before she left for Ohio, Conant told police that Gonzalez said he got the pills and money he needed. (Dkt. 11, Ex. B, T 225-26). She also said that "they were supposed to rob somebody and not f-----g shoot somebody." (Dkt. 11, Ex. B, T 228). After Conant was served paperwork in Ohio to compel her appearance for trial, Gonzalez told her in a phone call that she was sticking a knife in

---

[5] Police found fired shotgun shells at the property of Horne's grandmother, where Horne lived. They also found buried pants, boots, the victim's wallet, a cell phone, a Revelation 12-gauge shotgun with a shortened barrel, and a Walmart bag with a box of shotgun shells and a receipt. (Dkt. 11, Resp. Ex. B, T 114-21, 124-28, 136, 140-41). Gonzalez admitted he purchased shotguns shells at Horne's request. (Dkt. 11, Resp. Ex. B, T 355).

6

his back. She testified that he "may have" told her there was a way out, and she could go to a friend and stay low. (Dkt. 11, Ex. B, T 234).

While he states that he did not murder the victim and that Horne gave him property of the victim after the victim's death (Dkt. 1 at 8), the State presented substantial evidence establishing Gonzalez' guilt of robbery and felony murder. In addition to this evidence, the jury would have learned that Horne said Gonzalez and Horne intended to rob and kill the victim, had trial counsel presented a later statement by Horne that Horne alone intended robbery and murder. Accordingly, there was no reasonable probability of a different outcome. The state decision is not contrary to or an unreasonable application of *Strickland* and does not involve an unreasonable determination of the facts in light of the evidence. Claim (2) of this ground does not warrant relief.

### Claim (3), in part: trial counsel's alleged failure to call Raymond Lewis to verify the source of monies seized after the crime (as construed)

Gonzalez alleged in ground six of his postconviction motion that his trial counsel was ineffective in failing to call Raymond Lewis to testify to the source of approximately $700 found at his home. He alleged that $600 of that sum belonged to him and was obtained by use of Lewis' bank card, which provided access to a approximately $1600. (Dkt. 1 at 34). He alleged that a notarized letter of Lewis, and a bank statement showing withdrawals from Lewis's account, were brought to trial counsel's attention. (Dkt. 1 at 35). Asserting that Lewis was in the Sumter County jail and available to testify, he contended that had counsel deposed and called Lewis to testify that he had given Gonzalez his bank card, "it would have raised a reasonable doubt regarding any motive" he may have had to commit robbery and murder. (*Id.*).

The postconviction court summarily denied relief on *Strickland*'s prejudice prong. The state

his back. She testified that he "may have" told her there was a way out, and she could go to a friend and stay low. (Dkt. 11, Ex. B, T 234).

While he states that he did not murder the victim and that Horne gave him property of the victim after the victim's death (Dkt. 1 at 8), the State presented substantial evidence establishing Gonzalez' guilt of robbery and felony murder. In addition to this evidence, the jury would have learned that Horne said Gonzalez and Horne intended to rob and kill the victim, had trial counsel presented a later statement by Horne that Horne alone intended robbery and murder. Accordingly, there was no reasonable probability of a different outcome. The state decision is not contrary to or an unreasonable application of *Strickland* and does not involve an unreasonable determination of the facts in light of the evidence. Claim (2) of this ground does not warrant relief.

### Claim (3), in part: trial counsel's alleged failure to call Raymond Lewis to verify the source of monies seized after the crime (as construed)

Gonzalez alleged in ground six of his postconviction motion that his trial counsel was ineffective in failing to call Raymond Lewis to testify to the source of approximately $700 found at his home. He alleged that $600 of that sum belonged to him and was obtained by use of Lewis' bank card, which provided access to a approximately $1600. (Dkt. 1 at 34). He alleged that a notarized letter of Lewis, and a bank statement showing withdrawals from Lewis's account, were brought to trial counsel's attention. (Dkt. 1 at 35). Asserting that Lewis was in the Sumter County jail and available to testify, he contended that had counsel deposed and called Lewis to testify that he had given Gonzalez his bank card, "it would have raised a reasonable doubt regarding any motive" he may have had to commit robbery and murder. (*Id.*).

The postconviction court summarily denied relief on *Strickland*'s prejudice prong. The state

court found that the issue of the recovery of money from Gonzalez' home was minor and was briefly mentioned at trial.[6] Additionally, the state court noted that Gonzalez in the police interview admitted he received money from Horne after the robbery. Citing the substantial evidence of his guilt, the state court concluded that he had not shown prejudice. (Dkt. 11, Ex. P, R 152-153).

Lewis' letter states he learned his money was confiscated, but he does not assert he could testify, based on personal knowledge, that no portion of the seized money derived from the robbery. (Dkt. 1-1 at 1). Given the wealth of evidence establishing Gonzalez' guilt of robbery, there was no reasonable probability of a different outcome had counsel called Lewis at trial. The state decision is not contrary to, or an unreasonable application of, *Strickland* and is not based on an unreasonable determination of the facts in light of the evidence. Claim (2) of this ground does not warrant relief.

## B. Procedurally defaulted claims

### Claim (1); claim (3), defaulted aspects; claim (4); claim (5)

The remaining claims in this ground are procedurally defaulted because Gonzalez did not raise them in his first postconviction motion, or if he did, he did not raise them on appeal.[7] He cannot raise the claims in an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h).

A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims

---

[6]This finding is reasonable. The detective testified he believed the amount recovered was in excess of $500. (Dkt. 11, Ex. B, T 367-68). While citing this testimony in closing argument, the prosecutor did not make the recovery of money a central feature of the case.

[7]A federal claim is subject to procedural default where the petitioner failed to properly exhaust it in state court and it is obvious that the unexhausted claim would now be barred under state procedural rules. *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). The postconviction court denied some of Gonzalez' claims raised in his first postconviction motion after an evidentiary hearing. "Pursuant to state procedural rules, abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing." *Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006)(citing *Shere v. State*, 742 So. 2d 215, 217 n. 6 (Fla. 1999)).

8

if he can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Davila v. Davis*, 137 S. Ct. 2058, 2064–65 (2017) (citing *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). Gonzalez, in his Reply (Dkt. 12 at 2) cites *Martinez v. Ryan*, 566 U.S. 1 (2012), which holds:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 17. He fails to show that his procedural defaults are excused under *Martinez*.

**Claim (1): trial counsel's alleged lack of preparation lead to cumulative errors**

Gonzalez defaulted the claim of ineffective assistance of counsel presented in claim (1) of this ground because he did not raise this claim as a ground for relief in his first postconviction motion.[8] He does not show that the claim is substantial under *Martinez*. Were a claim of cumulative error cognizable, such a claim presupposes error. He fails to show trial counsel was unprepared for trial and does not establish any specific instance of ineffective assistance of counsel. Because there are no individual errors of counsel, there can be no cumulative error. *See Morales v. Sec'y, Fla. Dep't Corr.*, — Fed. App'x. —, 2017 WL 4309941, at *2 (11th Cir. Sept. 28, 2017) ("[W]e have rejected all of the claims of error before us. There are, therefore, no errors to cumulate.").

**Claim (3), defaulted aspects: trial counsel's alleged failure to introduce "witnesses" or an "affidavit provided to counsel"**

With the exception of the claim that trial counsel failed to call Lewis to verify the origin of

---

[8] He concluded in his postconviction motion that based on the grounds alleged "and the cumulative effect of them, defense counsel's errors clearly rise to the level of ineffective assistance of counsel." (Dkt. 1 at 46). He did not raise this assertion as an independent claim for relief. Were his postconviction motion construed to raise the claim, he defaulted it by not raising it on appeal of the denial of his postconviction motion.

seized money, the allegations in claim (3) of this ground are procedurally defaulted. The claims that trial counsel failed to present "witnesses" at trial or introduce an "affidavit provided to counsel" are defaulted because he did not raise these claims in his first postconviction motion. (Dkt. 1 at 8) These claims are not substantial under *Martinez*.

The allegation that counsel "never introduced witnesses" is conclusory. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). As to the allegation that counsel did not introduce an "affidavit provided to counsel," he provides Lewis's notarized letter but does not show that the letter was admissible under Florida law. Even if it had been introduced, he does not show there was any reasonable probability of a different outcome.

**Claim (4): trial counsel's alleged failure to depose "any witness"**

Gonzalez defaulted claim (4) of this ground because he did not allege in his first postconviction motion that trial counsel failed to conduct depositions of "any witness" prior to trial, "leaving counsel unprepared to effectively cross-examine." (Dkt. 1 at 8). He faulted trial counsel for not deposing Lewis, Conant, and Parish, but he did not assert that counsel failed to depose "any witness."[9] This claim is conclusory. Accordingly, claim (4) of this ground is insubstantial.

**Claim (5): trial counsel's alleged failure to object to unauthenticated evidence**

Gonzalez alleged in his first postconviction motion that trial counsel was ineffective for not objecting to the introduction of the store video of the ammunition on grounds of lack of

---

[9]He does not allege in this claim that trial counsel failed to depose Lewis. Were claim (4) of this ground construed to raise the claim, the state court's decision on the claim does not constitute an unreasonable application of *Strickland*; nor is it based an unreasonable determination of the facts in light of the evidence. Claim (4) does not allege that trial counsel failed to depose Conant and Parish; even if this ground were construed to raise these claims, they are defaulted because he did not raise them on appeal of the denial of his first postconviction motion.

authentication. (Dkt. 1 at 44-45). Claim (5) of this ground is liberally construed to raise the same claim. He defaulted this claim by not raising it on appeal of the denial of this claim.

Gonzalez has not shown cause for, and resulting prejudice from, his procedural defaults. Nor has he shown that federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). [10] Accordingly, he is not entitled to review of the procedurally defaulted claims presented in this ground. Ground One warrants no relief.

**Ground Two**

Gonzalez alleges:

Ineffective assistance of appellate counsel in contravention of the Sixth and Fourteenth Amendments of the U.S. Constitution in failing to raise. [sic] trial court erred in denying judg[]ment of acquittal and instruction [sic] the jury on the dual theory of 1st degree murder based on principal theory.

. . . .

State failed to prove prima facie case as to 1st degree murder relying on principal theory.

90.202(6) - Because attaching all transcripts to petition (to establish that no evidence was introduced to support premeditation as a principal would not be practical) petitioner respectfully request this Court take judicial notice on its own accord in case no: 5D11-3192.

To notice also a video interrogation of Petitioner was shown to jury where a detective gave his opinion on what constitutes guilt as a principal.

---

[10] A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To overcome a procedural default through a showing of actual innocence, the petitioner must present "reliable evidence . . . not presented at trial" such that "it is more likely than not that no reasonable juror would have convicted him of the underlying offense." *Schlup* at 324, 327. Gonzalez furnished an affidavit of Conant raising factual assertions about her conversations with him, her police interview, and her trial testimony. (Dkt. 1-1 at 2-4). Along with his motion for summary judgment, denied without prejudice (Dkts. 27, 28), he provided an affidavit of Parish raising assertions about her police interview and trial testimony. (Dkt. 27 at 42). He does not allege and show that the assertions in these affidavits constitute new, reliable evidence of actual innocence to overcome a procedural default.

11

(Dkt. 1 at 10).

Gonzalez presented this ground in his state petition alleging ineffective assistance of appellate counsel, in which he alleged that his appellate counsel failed to argue: (1) the trial court erred by denying his trial counsel's motion for judgment of acquittal, and (2) the trial court erred by instructing the jury on "the dual theory of first degree murder based on the principal theory." (Dkt. 11, Ex. Y). The state appellate court denied relief in a decision without written opinion. (Dkt. 11, Ex. CC). This decision warrants deference under § 2254(d)(1). *See Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011) ("[T]he summary nature of a state court's decision does not lessen the deference that it is due.") (citations omitted).

Claims of ineffective assistance of appellate counsel are analyzed under the *Strickland* standard. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). A petitioner must show that appellate counsel's performance was deficient, and there is a reasonable probability that, but for counsel's deficient performance, he would have prevailed on appeal. *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith*, 528 U.S. at 285-86).

At trial, Gonzalez' trial counsel conceded the evidence presented a jury question on the robbery charge and sought a judgment of acquittal on the first degree murder charge. Counsel argued that Horne's act of killing the victim was independent of an original plan. In support, he argued that there were no plans to shoot the victim, Gonzalez was in the car when Horne shot the victim and Gonzalez saw a flash and heard the sound, and that when he came back, Horne was removing the victim's clothes. On this basis, his trial counsel argued the State failed to make a prima facie showing of first degree murder under the principal theory. (Dkt. 11, Ex. B, T 375-76).

On appeal, his appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), identifying the potential issue of whether the trial court erred in denying the motion for judgment of acquittal. (Dkt. 11, Ex. E at 8-9). Appellate counsel specifically noted the sole argument raised in support of an acquittal. (Dkt. 11, Resp. Ex. E at 9). In his petition alleging ineffective assistance of appellate counsel, Gonzalez argued that there was no evidence to support the theory of premeditated murder, "even in light of the principal instruction." He also argued that there was no evidence that he acted with the intent necessary to be liable as a principal. (Dkt. 11, Ex. Y at 5-6). He did not preserve these arguments for review, however, as they were not raised in support of his motion for judgment of acquittal. *See Smith v. State*, 139 So. 3d 839, 844 (Fla. 2014) ("[W]hen a defendant does not raise in the trial court the same grounds for granting the motion argued on appeal, the claim is not preserved for appeal.") (citations omitted).

Gonzalez also did not preserve a challenge to the instructions on premeditation, felony murder, and the principal theory. These instructions were given without objection. (Dkt. 11, Ex. B, T453). Where an issue is not preserved for review, "appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits." *See Sairras v. Fla. Dep't of Corr.*, 496 Fed. App'x. 28, 34 (11th Cir. 2012) (citations omitted).

Even if available for review, the issues Gonzalez contends his appellate counsel should have raised would have been meritless. In Florida, the State may proceed on a theory of felony murder when the indictment charges the defendant with first-degree premeditated murder. *Hannon v. State*, 941 So. 2d 1109, 1148 (Fla. 2006). Florida's felony murder law provides that murder in the first degree includes "[t]he unlawful killing of a human being . . . [w]hen committed by a person engaged

13

in the perpetration of, or in the attempt to perpetrate, any . . . [r]obbery." *See* § 782.04(1)(a)2.d., Florida Statutes. The law regarding principals provides:

> Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

§ 777.011, Florida Statutes. This statute "eliminates the distinction between those who are actually or constructively present at the commission of the offense. . . . No distinction is made between those who are the brains of the crime and those who are the arms of the crime." *State v. Reid*, 886 So. 2d 265, 266 (Fla. 5th DCA 2004). "In Florida, the felony murder rule and the law of principals 'combine to make a felon liable for the acts of his co-felons.'" *Brison v. State*, 18 So. 3d 1075, 1077 (Fla. 2d DCA 2009) (quoting *Bryant v. State*, 412 So. 2d 347, 350 (Fla. 1982)).

When the record includes facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State. *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). Here, the State presented evidence that Gonzalez intended that the robbery occur. Even if he did not participate in the actual killing, the jury could have found from the evidence that he was guilty of felony murder. Accordingly, he fails to show that appellate counsel performed deficiently in not arguing that a judgment of acquittal should have been granted on the first degree murder charge. And it is not reasonably probable that he would have prevailed on appeal if the issue had been argued.

Gonzalez also fails to show that appellate counsel performed deficiently in not arguing that the trial court erred in instructing on first degree murder and the principal theory. He contends that

the trial court erred in instructing on premeditated murder, in conjunction with the principal theory, and that the alleged error was "exacerbated" by the detective's statements in the taped interview, in which, he asserts, the detective gave an opinion of what constitutes guilt as a principal. (Dkt. 11, Ex. Y at 8). He also argues the robbery occurred after the victim's death and not during the course of the robbery, which he asserts was required to support a charge of felony murder. (*Id.*).

By its decision, the state appellate court has answered the question of what would have happened under Florida law had appellate counsel argued that the trial court erred in instructing on the alternative theories of first degree murder and the principal theory. Gonzalez fails to establish the arguments he contends should have been made were meritorious. In Florida, "[a] general guilty verdict rendered by a jury instructed on both first-degree murder alternatives may be upheld on appeal where the evidence is sufficient to establish either felony murder or premeditation." *Crain v. State*, 894 So. 2d 59, 73 (Fla. 2004). In view of the evidence establishing his guilt of felony murder, he fails to show appellate counsel's performance in not raising trial error in the instructions on first degree murder and the principal theory was deficient, or that he was prejudiced.

The state appellate court's decision was neither contrary to, nor an unreasonable application of, *Strickland*, and was not based on an unreasonable determination of the facts in light of the evidence. Ground Two is denied.

**Ground Three**

Gonzalez alleges:

Ineffective assistance of trial counsel
2nd motion for post-conviction relief
. . .

1) Trial counsel failed to request special jury instruction to support defense theory

15

of afterthought.

2) Jury [ac]cepted State[']s theory without [sic] no other alternative or no instruction to cl[]arify the law.

3) Evidence presented in trial showed taking of property occurred as an afterthought.

4) State did not present any evidence that Petitioner had any plans to commit murder, or participate in the felonious design.

(Dkt. 1 at 11). When Gonzalez presented these claims in one of two grounds in his second postconviction motion, the state postconviction court rejected the motion as successive. (Dkt. 11, Exs. DD, EE). The court found that he did not sufficiently justify his failure to raise the claims in his first postconviction motion, and there was no reason apparent on the face of the record for his failure to do so. (Dkt. 11, Ex. EE at 3). The *per curiam* affirmance (Dkt. 11, Ex. II) is presumed to rest on the same grounds. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

"Federal habeas courts reviewing convictions from state courts will not consider claims that a state court refused to hear based on an adequate and independent state procedural ground." *Davila v. Davis*, 137 S. Ct. 2062 (2017). State rules count as "adequate" if they are "firmly established and regularly followed." *Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016) (internal citation omitted). The state court's decision on this ground rests on independent and adequate state grounds barring federal habeas review. The limitations on successive motions are firmly established and regularly followed. *See Baker v. State*, 878 So. 2d 1236, 1243-44 (Fla. 2004); Fla. R. Crim. P. 3.850(h).

Gonzalez makes none of the required showings to excuse his procedural default. He alleged in his second postconviction motion that he requested his appointed counsel to amend his first motion, and counsel "negligently failed to amend the original motion before the evidentiary hearing" with the claim. (Dkt. 11, Ex. DD at 8). The state postconviction court found that he was not entitled

to have postconviction counsel amend the motion, as counsel was appointed for the limited purpose of an evidentiary hearing. (Dkt. 11, Ex. EE at 3). To the extent *Martinez* applies because Gonzalez had no counsel when he filed his first postconviction motion, he does not show the defaulted claim of ineffective assistance of trial counsel raised in this ground is substantial.

Specifically, he fails to show the defaulted claim of ineffective assistance of trial counsel raised in this ground "has some merit." *Martinez*, 566 U.S. at 14. In *Davis v. State*, 922 So. 2d 438, 443 (Fla. 5th DCA 2006), the state appellate court found the trial court abused its discretion in denying his requested instruction that read: "[i]f the evidence shows that the taking of property occurred as an afterthought to the use of force or violence which resulted in the death of the victim, the taking does not constitute robbery, but may still constitute theft." *Id.* at 443. Gonzalez does not demonstrate the state trial court would have granted a request for an "afterthought" instruction. He therefore fails to show his counsel performed deficiently to his prejudice by not requesting the instruction. And he fails to show cause and prejudice to excuse his default, and does not meet the fundamental miscarriage of justice exception. Ground Three is denied.

**Supplemental Ground**

Gonzalez filed a "notice of supplemental ground XI . . . " (Dkt. 7) raising this claim:

> Petitioner was ren[d]ered ineffective assistance of trial counsel when counsel failed to object and move for a mistrial due to Detective Lakin[']s highly prejudicial statements and opinions on what constitu[t]ed principal theory and felony murder before the jury. In violation of the Sixth and Fourteenth Amendments of the U.S.A.C.

(Dkt. 7 at 4).[11] He procedurally defaulted this claim because he did not raise it in his first

---

[11] His notice was construed, and granted, as a request to amend the petition to add one ground. (Dkt. 8). While he did not file an amended petition, the Court addresses this ground, as it appears from the docket that the deadline for filing an amended petition had passed when prison officials mistakenly returned his copy of the order.

postconviction motion. He cannot return to state court to raise the claim in an untimely, successive postconviction motion. He cites *Martinez* (Dkt. 7 at 3) but does not show the claim is substantial.

He contends that during his video interrogation, the detective "gave countless inaccurate facts and statements on what he feels constitu[t]es[] principal theory, principal [sic] murder, and felony murder." (Dkt. 7 at 4). He alleges that the detective's opinion was that Conant was a principal because she said she loaned her car to him. He asserts that his trial counsel rendered ineffective assistance by not objecting to the detective's "inaccurate" application of the law and moving for a mistrial when the detective "continued to give his highly prejudic[i]al" opinion on what the jury must reach to find him guilty as a principal. (Dkt. 7 at 5). Notwithstanding, he does not show that the state trial court would have excluded any of the detective's statements or granted a mistrial when the video interview was presented to the jury. Accordingly, he fails to show there was any reasonable probability of a different outcome had counsel objected to any of the detective's statements and moved for a mistrial.

Gonzalez also challenges the reasoning of the state postconviction court in denying his claim that trial counsel was ineffective for not deposing and calling Raymond Lewis to testify at trial. He argues that had the state postconviction court reviewed the police interrogation "as a whole," the court would have seen that he was in a state of duress when he made incriminating statements. (Dkt. 7 at 9). He maintains this was caused by the detective's "constant threats" of incarcerating Conant if he did not confess. (*Id.*). However, he procedurally defaulted these claims by not raising them on appeal of the denial of his first postconviction motion. Although he asserts the state courts "failed in not granting an evidentiary hearing" on his claim that trial counsel failed to depose and call Lewis, (Dkt. 7 at 7), this contention does not state a basis for habeas relief because it goes to issues

18

"unrelated to the cause of [his] detention." *Quince v. Crosby*, 360 F.3d 1259, 1261 (11th Cir. 2004) (citation omitted). It follows that the supplemental ground and argument in the notice of supplemental ground warrant no relief.

Accordingly,

1. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

2. Petitioner is not entitled to a certificate of appealability (COA). He does not have the absolute right to appeal. 28 U.S.C. § 2253(c)(1). A COA must first issue. *Id.* To merit a COA, he must show that reasonable jurists would find debatable both (1) the merits of an underlying claim, and (2) the procedural issues that he seeks to raise. *See* 28 U.S.C. § 2254(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Petitioner has not made the requisite showing. Finally, because he is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** on October 19th, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record